IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CHRISTOPHER L. SHEPARD,

      *Plaintiff*,

vs.

Case No. 08-2327-EFM

AVCORP BUSINESS SYSTEMS, LLC,

      *Defendant.*

**MEMORANDUM AND ORDER**

This is a Title VII employment case involving claims of race and religious discrimination. Plaintiff Christopher Shepard alleges that his former employer, Defendant AVCORP Business Systems, LLC, discriminated against him on the basis of his race and religion in violation of Title VII of the Civil Rights Act of 1964 when it terminated his employment on January 5, 2007. This matter is now before the Court on Defendant's motion for summary judgment (Doc. 56). For the reasons stated below, the Court denies in part and grants in part Defendant's motion.

**I. Facts**[1]

Defendant sells mailroom-related equipment. In May of 2004, Defendant hired Plaintiff, an African-American, Catholic male, to be a sales representative in its Kansas City office. George

---

[1] The following facts are either uncontroverted or, where disputed, construed in the light most favorable to Plaintiff. In its briefing, Defendant argues that this Court should strike many of the facts argued by Plaintiff in his response because they were not set forth in Plaintiff's statement of facts, as is required by D. Kan. R. 56.1. While the Court agrees with Defendant that Plaintiff should have put all of the facts he relies on in his statement of facts, it will not strike the facts missing from that statement solely on that ground.

-1-

Proctor, who is also an African-American male, in conjunction with Mike Halls, made the decision to hire Plaintiff. Plaintiff remained employed by Defendant until his termination on January 5, 2007.

For the entire time that Plaintiff worked for Defendant, Mr. Proctor was the sales manager of Defendant's Kansas City office. As sales manager, Mr. Proctor was, among other things, responsible for making sure that the sales representatives achieved the sales goals that were set for them. To help his representatives meet their goals, Mr. Proctor wrote them memos advising them of areas they needed to improve on, went on ride alongs with them, personally certified their product demonstrations, held weekly meetings, and, in cases where he felt that a sales representative's performance was so deficient that they were in danger of being terminated, placed them on a performance improvement plan.

From the beginning, Mr. Proctor played an active role in Plaintiff's life with Defendant. Shortly after Plaintiff started, Proctor began sending Plaintiff memos. These memos primarily highlighted areas in which Proctor believed Plaintiff was deficient. Plaintiff received his first memo on July 22, 2004. That memo detailed six specific areas that Plaintiff needed to work on. The second came on September 17, 2004, and listed five specific areas of improvement. The third, dated November 22, 2004, in addition to describing three areas that needed attention, informed Plaintiff that he was going to be placed on a performance improvement plan. The fourth arrived on September 19, 2005, and stated that Plaintiff had failed to make a sufficient number of phone calls. The fifth Plaintiff received on September 19, 2006.[2] That memo noted, among other things, that Plaintiff had achieved only 75.7% of his sales quota to date. Additionally, it informed Plaintiff that

---

[2]Defendant alleges that Mr. Proctor sent, and Plaintiff received, a memo dated March 13, 2006. Because Plaintiff controverts this fact, the Court, for purposes of summary judgment, will infer that Plaintiff did not receive it.

he was going to be placed on a new performance improvement plan and outlined the numerous criteria that Plaintiff would have to meet to avoid termination. The sixth, entitled "final warning," arrived on November 15, 2006. That memo set forth five criteria that Plaintiff had to meet in order to maintain his employment: (1) Plaintiff had to meet his November sales quota; (2) Plaintiff had to meet his December sales quota; (3) Plaintiff had to update the ACT database daily; (4) Plaintiff had to mail twenty-five mailers weekly with follow-up calls; (5) Plaintiff had to be on time daily and ready for work.

In addition to sending Plaintiff memos, Mr. Proctor went on ride alongs with Plaintiff. It was during these ride alongs that Proctor made most of the statements on which Plaintiff's claims rely. According to Plaintiff, during one of his early ride alongs with Proctor, Proctor asked if he was living with his then girlfriend. When Plaintiff stated that he was, Proctor responded by telling him that it was against God's will that he was living with a woman he was not married to. Apparently, this was not the only time Proctor commented on religion. According to Plaintiff, Proctor made "off-colored" comments about Catholic Priests a couple of different times. On another ride along, Plaintiff alleges that Mr. Proctor told him that "[he] would have to perform at a higher level than his white counterparts to be successful. [He] would have to be twice as good to succeed." According to Plaintiff's evidence, this was not the only time that Mr. Proctor made a statement like this to an African-American sales representative.

Because of deficiencies he perceived in Plaintiff's performance, Proctor also placed Plaintiff on a performance improvement plan on November 22, 2004. On September 19, 2006, Proctor put Plaintiff on a new plan. At some point, three other white sales representatives were added to the plan that Plaintiff was on. Under this common plan, the four sales representatives were to attend

one-on-one meetings with Mr. Proctor and turn in handwritten reports of their daily activity to Proctor. However, according to Plaintiff's evidence, Proctor only enforced these requirements against Plaintiff.

Despite Proctor's efforts, Plaintiff was still unable to meet the sales quotas set for him. His failure to meet his November and December's sales quotas meant that he failed to satisfy the first two requirements listed in the November 15, 2006, memo. As stated in Mr. Proctor's January 5, 2006, termination letter to Plaintiff, it was Plaintiff's failure to meet the requirements set forth in that memo that caused him to be terminated.

In the months leading up to Plaintiff's termination, two of the sales representatives who had been on the same performance improvement plan as Plaintiff were under their sales quota. At least one of these representatives is still employed by Defendant.[3]

## II. Standard of Review

The Court is familiar with the standards governing the consideration of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[5] A fact is "material" if, under the applicable

---

[3]Based on the evidence presented, it is not clear whether the other sales representative is still employed by Defendant.

[4]Fed. R. Civ. P. 56(c).

[5]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

-4-

substantive law, it is "essential to the proper disposition of the claim.⁶ In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.⁷

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.⁸ The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.⁹ If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.¹⁰ In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.¹¹ The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.¹²

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."¹³

---

⁶*Id.*

⁷*Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

⁸*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

⁹*Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

¹⁰*Celotex*, 477 U.S. at 323.

¹¹*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

¹²*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

¹³*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III. Analysis

In the present case, Plaintiff does not allege, and this Court does not find, that there is direct evidence of race or religious discrimination.[14] As a consequence, the Court will apply the familiar *McDonnell Douglas* burden-shifting framework.[15] Under this framework,

> a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case. If a plaintiff establishes a prima facie case, the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision. Should the defendant articulate a nondiscriminatory reason, the burden shifts back to plaintiff to show a genuine issue of material fact as to whether defendant's reason for the discharge is pretextual.[16]

Here, for purposes of its motion, Defendant concedes that Plaintiff can establish a prima facie case of discrimination. Further, Plaintiff, for purposes of his response, concedes that Defendant has articulated a facially legitimate, nondiscriminatory reason for terminating him, that is, his failure to comply with the five requirements set forth in the November 15, 2006, memo. Therefore, the operative question in this case is whether Defendant's asserted reason for terminating Plaintiff is pretextual.

To show pretext, "a plaintiff must produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence

---

[14]The only evidence that could conceivably be construed as direct evidence is Mr. Proctor's statement to Plaintiff that he would be held to a higher standard due to the fact that he is African-American. However, because this statement was not made in connection with Plaintiff's termination, it merely raises the inference that Plaintiff was discriminated against. *See Anthony v. City of Clinton*, 1999 WL 390927, at *5 (10th Cir. June 15, 1999). As a consequence, this statement is not direct evidence. *See Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996).

[15]*See Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).

[16]*MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citations omitted).

infer that the employer did not act for the asserted non-discriminatory reasons."[17] In cases where an "employee was hired and fired by the same person within a relatively short time span, there is 'a strong inference that the employer's stated reason for acting against the employee is not pretextual.'"[18] This inference is commonly referred to as the "same actor inference."[19]

In his response, Plaintiff argues that the "same actor inference" is not applicable here because this case is factually distinguishable from the Tenth Circuit case that adopted the inference, *Antonio v. Sygma Network, Inc.*[20]. Specifically, Plaintiff argues that because he, unlike the plaintiff in *Antonio*, claims that his supervisor, who is of the same race as him, held him to a higher standard due to the fact that the supervisor expected individuals of his shared race to perform additional work and perform at a higher level than similarly situated white employees, the inference does not apply. The Court finds this argument unpersuasive. Nothing in the *Antonio* opinion suggests that the application of the inference hinges upon the allegations made by the plaintiff. Based on the Court's reading, the only questions that are relevant when determining whether the inference should apply are whether the employee was hired and fired by the same person and whether the hiring and firing took place within a relatively short time frame. Here, because Plaintiff does not argue that Mr. Proctor did not hire and fire him or that his termination did not occur a short time after he was hired, the inference applies.

---

[17] *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 490 (10th Cir. 2006).

[18] *Antonio*, 458 F.3d at 1183 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (footnote omitted).

[19] *Id.* at 1183.

[20] 458 F.3d 1177 (10th Cir. 2006)

Contrary to Defendant's contention, though, Plaintiff need not come forward with "egregious facts" in order to overcome this inference. Unlike the Fourth Circuit, which decided the case Defendant relies on for this contention, *Proud v. Stone*[21], the Tenth Circuit has never stated that a plaintiff must present such evidence.[22] Furthermore, the fact that a significant amount of time, two and a half years, has passed between when Plaintiff was hired and when he was fired strongly militates against the application of that standard here. As noted by other courts, "the forcefulness of the same-actor inference diminishes over time."[23] Thus, in instances where the inference is diminished, as is the case here, it makes little sense to require a plaintiff to produce "egregious facts" in order to survive summary judgment. Therefore, as long as Plaintiff's evidence creates a reasonable inference that he was discriminated against based either on his religion or race, the Court will deny Defendant's motion in part or in whole.

Due to the factual similarities between this case and *Smith v. Avcorp Business Systems, LLC*,[24] the Court finds *Smith* illustrative on the question of whether Plaintiff's evidence of race discrimination is sufficient to overcome the same actor inference and survive summary judgment. There, the plaintiff, also an African-American sales representative, was fired approximately six months after he was hired because he failed to become certified in one of his product

---

[21] 945 F.2d 796 (4th Cir. 1991)

[22] *Smith v. Avcorp Business Systems, LLC*, 2009 WL 2392396, at *3 (D. Kan. July 31, 2009).

[23] *Heinemann v. Howe & Rusling*, 529 F. Supp. 2d 396, 412 (W.D.N.Y. 2008); *see also Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 138 (2d Cir. 2000); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995). The reason for this is simple: "[o]ver the years, an individual may develop an animus towards a class of people that did not exist when the hiring decision was made." *Buhrmaster*, 61 F.3d at 464; *see also Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1065 n.4 (7th Cir. 2008).

[24] 2009 WL 2392396 (D. Kan. July 31, 2009).

demonstrations. The person who made the decision to fire the plaintiff was the same person who had hired him and had reviewed his product demonstration, Mr. George Proctor.

Following his termination, the plaintiff in *Smith* brought a Title VII action against his employer, Avcorp, the same defendant as the one in this case, alleging that it had discriminated against him based on his race. Avcorp moved for summary judgment. In response, the plaintiff presented evidence that Mr. Proctor had told him that he would have to "perform better than the white guys" and that his product demonstration was "fairly close" to the demonstrations put on by two white sale representatives, both of whom were certified. He also came forth with additional evidence he believed established pretext. In its analysis of the plaintiff's evidence, the court first noted that Mr. Proctor's statement to the plaintiff, in and of itself, "satisfied plaintiff's burden under Rule 56(e)." It then commented on the plaintiff's evidence that two white sales representatives, despite making presentations similar to the one made by the plaintiff, were certified. The court stated that this evidence further suggested that the plaintiff was held to a higher standard due to his race. Because it concluded that the aforementioned evidence was sufficient to meet the plaintiff's burden, it did not consider the plaintiff's additional evidence.

Like the plaintiff in *Smith*, the plaintiff in this case has presented evidence that the person who fired him told him that "[he] would have to perform at a higher level than his white counterparts to be successful." He also has come forth with evidence that at least one similarly-situated white sales representative was not terminated for failing to meet his quota. Additionally, Plaintiff has produced deposition testimony from some of his former coworkers – Jim Mullins and Josh Horne – that, based on their personal observations, they were of the opinion that Mr. Proctor treated

African-Americans differently than whites.[25] Viewing this evidence as a whole, and in the light most favorable to Plaintiff, the Court finds that a reasonable jury could conclude that Mr. Proctor held Plaintiff to a higher standard of performance than Plaintiff's white counterparts. As a result, the Court denies Defendant's motion for summary judgment with regards to Plaintiff's Title VII claim based on race discrimination.[26]

As for Plaintiff's Title VII claim based on religious discrimination, however, the Court grants Defendant's motion. The only evidence that Plaintiff offered in support of this claim is his deposition testimony that, sometime around when he started working for Defendant, Mr. Proctor told him, after hearing that he was living with his girlfriend, that living with a woman that is not your wife is against God's will, and that Proctor made "off-colored" comments about Catholic Priests a couple of different times. After thoroughly reviewing the record, the Court is convinced that these comments are isolated and unrelated to the challenged action. As such, they are "best characterized as stray remarks."[27] Because they are stray remarks, they are insufficient to raise a reasonable inference of discrimination.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Doc. 56) is hereby GRANTED in part and DENIED in part.

---

[25]*See Lebow v. Meredith Corp.*, 484 F. Supp. 2d 1202, 1216 (D. Kan. 2007) (considering, at the summary judgment stage, statements similar to the ones presented in this case).

[26]As was true in the *Smith* case, the plaintiff in this case has to come forward with considerable additional evidence that he believes establishes pretext or otherwise demonstrates that his termination was based on race. Defendant has asserted objections to much of this evidence on various grounds, such as hearsay and relevancy. Because the Court concludes that Plaintiff's Title VII claim based on race discrimination survives summary judgment without regard to this additional evidence, the Court need not evaluate Defendant's objections at this juncture.

[27]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994).

**IT IS SO ORDERED.**

Dated this 1st day of December, 2009, in Wichita, Kansas.

                                             /s Eric F. Melgren
                                             ERIC F. MELGREN
                                             UNITED STATES DISTRICT JUDGE